

FILED
LODGED
RECEIVED
**MAIL**

NOV 17 2015

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                    DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DANIEL HALDANE, WENDEL JOHNSON,
TIMOTHY MARTIN, and LEESHAWN
REDIC, on behalf of themselves and all others
similarly situated,

                Plaintiffs,

    vs.

G. STEVEN HAMMOND, M.D., Chief Medical
Officer of the Washington Department of
Corrections, and DAN PACHOLKE, Secretary
of the Washington Department of Corrections, in
their official capacities,

                Defendants.

No. **15-CV-1810** RAJ-MAT

**CLASS ACTION**

**CLASS ACTION COMPLAINT FOR
INJUNCTIVE AND DECLARATORY
RELIEF**

## I.    INTRODUCTION

This lawsuit challenges the Washington Department of Corrections' ("DOC's") regular

practice of withholding necessary medical care from patients with serious and painful medical

conditions.

DOC denies patient-prisoners access to constitutionally adequate medical care by

COMPLAINT– Page 1

COLUMBIA LEGAL SERVICES
Institutions Project
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-0838

1   utilizing a healthcare preapproval system that regularly results in arbitrary and medically

2   unsound decisions. DOC's inadequate preapproval system denies medically necessary treatment

3   to Plaintiffs, and those similarly situated, by allowing a committee of clinicians and

4   administrators who have little familiarity with the patient to override the clinical

5   recommendations of the patient's treating DOC practitioner and outside specialists. Under this

6   preapproval system, DOC regularly disregards evidence that a patient's condition is causing

7   chronic and substantial pain and functional limitations. The Defendants' failure to properly

8   review medical cases and their denials of necessary care expose Plaintiffs, and those similarly

9   situated, to a substantial risk of ongoing and unnecessary pain, functional limitations, and other

10  serious harm, in violation of the Eighth Amendment to the United States Constitution.

11
        The named Plaintiffs are prisoners in the custody of the DOC and are subject to DOC's
12
    policies governing the provision of medical care. Plaintiffs suffer from various medical
13
14  conditions that result in chronic and substantial pain or other conditions that warrant medical

15  treatment or evaluation that DOC has refused to provide. The Plaintiffs seek declaratory and

16  injunctive relief for themselves and for the proposed class they seek to represent.

17                      II.      JURISDICTION & VENUE

18      1.      This Court has original jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. §

19  1343(a)(4). Declaratory relief is authorized by 28 U.S.C. §§ 2201 – 2202.

20      2.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because at least

21  one Defendant resides in the Western District of Washington and because a substantial part of

22  the events or omissions giving rise to Plaintiffs' claims occurred in this District.

23

24

25

COMPLAINT– Page 2

### III.    PARTIES

**Plaintiffs**

3.    **Daniel Haldane** is 49 years old and currently incarcerated at Monroe Correctional Complex ("MCC") in Monroe, Washington. Mr. Haldane has stage-3 kidney failure and an undiagnosed condition that causes him to regularly pass large kidney stones. This condition causes him chronic and substantial pain that interferes with his ability to eat and sleep. Defendants refuse to provide Mr. Haldane with necessary diagnosis and treatment for this condition.

4.    **Wendel Johnson** is 61 years old and currently incarcerated at Airway Heights Corrections Center ("AHCC") in Airway Heights, Washington. Mr. Johnson suffers from a condition that causes him chronic and substantial pain and a tingling, cold sensation in his right hand and wrist. The pain limits his ability to write, lift objects, and sleep. Defendants refuse to provide him with necessary medical care for this condition.

5.    **Timothy Martin** is  47 years old and currently incarcerated at MCC. Mr. Martin suffers from chronic and substantial pain following a February 2013 hernia surgery. The pain limits Mr. Martin's ability to work, eat, and sleep. Defendants refuse to provide Mr. Martin with necessary medical care for this condition.

6.    **LeeShawn Redic** is 34 years old and currently incarcerated at Stafford Creek Corrections Center ("SCCC") in Aberdeen, Washington. Mr. Redic was diagnosed with a hernia in 2009. Although the hernia causes him chronic and substantial pain that limits his ability to work and eat, Defendants refuse to provide him with the necessary medical care to treat the condition.

COMPLAINT– Page 3

COLUMBIA LEGAL SERVICES
Institutions Project
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-0838

1

**Defendants**

2    7.    **G. Steven Hammond, M.D.,** is the Chief Medical Officer for DOC. In that role,

3    he has a duty to ensure that DOC provides constitutionally-adequate medical care to prisoners in

4    its custody. He has authority to approve or deny medical treatment for DOC prisoners. At all

5    times relevant to this action, Dr. Hammond was acting under color of state law. Dr. Hammond is

6    sued in his official capacity.

7    8.    **Dan Pacholke** is the Secretary of the Washington Department of Corrections. In

8    that capacity, he is required to exercise all powers and perform all duties prescribed by law with

9    respect to the administration of Washington prisons, including adopting, implementing, and

10   enforcing policies and procedures to ensure that prisoners in DOC's custody receive

11   constitutionally adequate medical care. He has the authority to direct the activities of subordinate

12   officers and other DOC employees. At all times relevant to this action, Mr. Pacholke was acting

13   under color of state law. Mr. Pacholke is sued in his official capacity.

14

15                    IV.    **FACTUAL ALLEGATIONS**

16   A.    **Inadequate Medical Decision-Making Process in the Washington Department of Corrections**

17

18   9.    Medical care for Washington prisoners is provided according to the terms of a

19   DOC-created Offender Health Plan ("OHP").

20   10.    The OHP defines what types of medical care the Department considers

21   "medically necessary" and authorizes DOC healthcare providers to administer only limited,

22   specified services to patients under their care without prior approval.

23   11.    If a patient needs medical care that is not specifically listed as "medically

24   necessary" in the OHP, the DOC healthcare provider may not provide the treatment unless she

25   obtains preapproval.

COMPLAINT– Page 4

COLUMBIA LEGAL SERVICES
Institutions Project
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-0838

12.     If a DOC medical provider is unable to diagnose or adequately treat a patient's condition, he may not refer the patient to an outside specialist capable of doing so without obtaining prior approval.

13.     Most medical provider requests for approval to treat or refer their patients are decided by an internal utilization review body known as the DOC Care Review Committee ("CRC"). The CRC consists of DOC physicians, physician assistants, and nurse practitioners from across the state who participate in a weekly conference call where they vote to approve or deny medical care for patients in DOC custody.

14.     The CRC reviews requests for medical care across a vast spectrum of specialties including orthopedics, neurology, obstetrics and gynecology, neurosurgery, audiology, cardiology, dermatology, endocrinology otolaryngology, gastroenterology, infectious diseases, internal medicine, ophthalmology, oncology, optometry, oral surgery, pain management, prosthetics and orthotics, pulmonology, radiology, rheumatology, surgery and urology. However, the CRC members voting on these cases do not necessarily have expertise in the area of concern.

15.     Each CRC session lasts approximately one-and-a-half to two hours. During this time, the committee addresses, on average, about fifteen to twenty cases, and sometimes many more. On at least one occasion there were over sixty cases scheduled for presentation on a CRC call.

16.     Whether a patient will receive the care recommended by his or her treating provider is determined by a majority vote of the CRC members present on the call.

17.     The CRC members vote after hearing only a brief case summary presented by the treating medical provider.

18.     CRC members typically do not examine a patient or even review his or her

COMPLAINT– Page 5

COLUMBIA LEGAL SERVICES
Institutions Project
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-0838

1 | medical records before voting to approve or deny the care being recommended by the treating

2 | medical provider.

3 |    19. The OHP recognizes "intractable pain" as a condition justifying medical

4 | intervention. Yet, the CRC often disregards patients' complaints of chronic and substantial pain

5 | described in the case summary. As a result, the CRC regularly denies treatment to relieve

6 | patients' pain.

7 |    20. CRC decisions are based on committee members' interpretation of the OHP, not

8 | on the application of standardized medical criteria or objective clinical protocols.

9 |    21. CRC decisions are often arbitrary, resulting in patients being denied proposed

10 | care even when their medical records indicate that the care is medically necessary according to

11 | the OHP.

12 |

13 |    22. Upon information and belief, the CRC rejects approximately sixty percent of the

14 | requests and recommendations submitted by patients' treating medical providers.

15 |    23. Numerous patients in DOC custody, including the named Plaintiffs, have suffered

16 | – and continue to suffer – chronic and substantial pain, functional limitations, and other

17 | symptoms due to the CRC's pattern and practice of denying care recommended by patients'

18 | treating medical providers.

19 |    24. A patient who is denied medical care by the CRC may appeal the decision

20 | through the normal DOC grievance process. However, DOC rarely reverses the decisions made

21 | by the CRC.

22 |

23 |    25. Defendants are aware of these patterns and practices that deny needed medical

24 | care to prisoners in their care, but refuse to take steps to remedy the problem.

25 |

COMPLAINT– Page 6

COLUMBIA LEGAL SERVICES
Institutions Project
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-0838

**B.**   <u>Harm to Plaintiffs Caused by the Inadequate CRC System</u>

*The CRC is withholding needed medical care from Daniel Haldane.*

26.     Mr. Haldane has stage-3 kidney disease and an undiagnosed medical condition that results in calcium deposits throughout his body. Mr. Haldane has experienced many of the common symptoms of kidney disease, which include nausea and vomiting, weakness and fatigue, decreased mental sharpness, chest pain, shortness of breath, high blood pressure and sleep problems.

27.     Mr. Haldane also has an undiagnosed medical condition that causes him to pass large kidney stones on a regular basis. Kidney stones are hard mineral deposits that form inside the kidneys. Even small ones can be painful to pass out of the body. Symptoms include severe pain in the side and back, pain below the ribs, pain that spreads to the lower abdomen and groin, pain that comes in waves and fluctuates in intensity, pain on urination, pink, red or brown urine, cloudy or foul-smelling urine, nausea and vomiting, persistent need to urinate, urinating more often than usual, and fever and chills if an infection is present.

28.     When Mr. Haldane is passing kidney stones he experiences severe pain that goes as high as 10 out of 10. On those occasions he cannot get out of bed or eat. The pain forced him to quit his job as a dog handler in the prison's dog training program.

29.     Mr. Haldane passes approximately one kidney stone per month, and has approximately three to four kidney-stone-related symptoms every sixty days.

30.     Mr. Haldane has experienced kidney problems since at least 2006, when housed at Monroe Correctional Complex. At that time he received treatment for pain control, including being sent to the hospital for a CT scan and medications.

31.     In 2006 or 2007, DOC medical staff performed a CT scan on Mr. Haldane that

COMPLAINT– Page 7

COLUMBIA LEGAL SERVICES
Institutions Project
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-0838

revealed seven stones on one side and three or four on the other. Medical staff told him to let the stones pass naturally.

32.     In 2011, Mr. Haldane was seen by an outside urologist. The urologist found a number of sizable stones in his kidneys.

33.     On one occasion, while the prison was on lockdown, Mr. Haldane had a kidney-stone episode. His body temperature rose significantly and he began urinating blood. Mr. Haldane declared an emergency and was taken to the hospital.

34.     In 2013, while at the Coyote Ridge Corrections Center, Mr. Haldane was taken to Kadlec Hospital in Kennewick, Washington. Medical staff there discovered two large masses on his kidneys – one measuring 14 mm on his right kidney and one measuring 6-7 mm on his left side. The doctors at Kadlec told him he needed to see a urologist and found that Mr. Haldane produces large amounts of calcium, resulting in calcium deposits on his elbows, feet, and other parts of his body.

35.     In August 2014, DOC transferred Mr. Haldane back to MCC.

36.     DOC denied Mr. Haldane's requests x-rays and CT scans to monitor his condition. Instead, DOC offered to prescribe Torodol to Mr. Haldane to treat his pain. He did not take the Torodol, based on the recommendation of the outside urologist he saw in 2011. According to PubMed Health, Torodol should not be taken by a patient with advanced kidney disease.

37.     DOC has provided conservative treatment to treat Mr. Haldane's kidney problems, including various pain medications that have not been effective at reducing his pain or the production of kidney stones.

38.     Currently, Mr. Haldane is not receiving any treatment for his kidney problems besides a medication to make it easier to urinate.

COMPLAINT– Page 8

COLUMBIA LEGAL SERVICES
Institutions Project
101 Yesler Way, Suite 300
Seattle, WA   98104
(206) 464-0838

39.     Mr. Haldane filed a grievance about the refusal of treatment, which was denied. He appealed the denial to the highest level possible, but the appeals were also denied.

40.     Mr. Haldane continues to suffer chronic and substantial pain due to his regular passage of large kidney stones. He continues to have trouble eating and sleeping, which affects his mental health.

41.     As a result of Defendants' refusal to properly treat his condition, Mr. Haldane is likely to continue suffering severe pain and limitations on basic daily activities.

***The CRC is withholding needed medical care from Wendel Johnson.***

42.     Wendel Johnson was diagnosed with carpal tunnel syndrome before coming to DOC. He has pain in his right wrist and hand, which has existed since at least 2007.

43.     Carpal tunnel syndrome is a condition that causes numbness, tingling or pain and other symptoms in the hand and wrist. Left untreated, it can lead to permanent nerve and muscle damage.

44.     Mr. Johnson experiences a number of symptoms related to his carpal tunnel syndrome, including constant, severe pain in his right hand and wrist, and a tingling, cold feeling in the hand that exacerbates the pain. Mr. Johnson has rated his pain level as high as 8 out of 10.

45.     The pain caused by Mr. Johnson's carpal tunnel syndrome significantly limits his ability to write and lift. This is especially problematic for Mr. Johnson because he is right-hand-dominant. He recently fell while attempting to climb into his top bunk because his hand "gave out."

46.     Mr. Johnson generally gets only four to five hours of sleep per night due to the pain.

47.     Mr. Johnson has notified DOC medical staff repeatedly over the past several years

COMPLAINT– Page 9

COLUMBIA LEGAL SERVICES
Institutions Project
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-0838

1  about the significant pain in his right hand and wrist and has requested appropriate treatment.

2      48.    Mr. Johnson's medical providers have tried several conservative measures to treat

3  the pain in his hand, including different pain medications and allowing him to wear two gloves to

4  address the cold sensation in his hand.

5      49.    None of the treatment DOC has provided has been effective in reducing the

6  chronic pain in Mr. Johnson's right hand. In fact, he has notified staff that his condition has

7  worsened. His hand also remains freezing cold, particularly during the winter.

8      50.    On October 10, 2013, Mr. Johnson's DOC medical provider requested that the

9  CRC approve surgical treatment for Mr. Johnson's right hand and wrist to treat his pain.

10     51.    On October 23, 2013, the CRC denied the provider's request for surgery on the

11 grounds that it was "not medically necessary" under the Offender Health Plan. It did not

12 recommend alternative treatment. Mr. Johnson filed a grievance about the CRC's decision,

13 which was denied. He appealed the denial to the highest level possible. His appeals were denied.

14     52.    Mr. Johnson's symptoms have not resolved. The pain in his right wrist remains

15 severe, he continues to have problems sleeping at night, and he has significant limitations on his

16 ability to write and lift.

17     53.    Currently, DOC is not providing Mr. Johnson with any treatment for the pain in

18 his right hand and wrist.

19     54.    As a result of Defendants' refusal to properly treat his condition, Mr. Johnson is

20 likely to continue suffering severe pain and limitations on basic daily activities.

21 ***The CRC is withholding needed medical care from Timothy Martin.***

22     55.    In 2013, while in DOC custody, Mr. Martin underwent surgery to repair a left

23 inguinal hernia. The surgery did not improve his condition.

COMPLAINT– Page 10

COLUMBIA LEGAL SERVICES
Institutions Project
101 Yesler Way, Suite 300
Seattle, WA 98104
(206) 464-0838

56.     Since the surgery, Mr. Martin continues to experience a number of symptoms, including chronic and substantial left inguinal pain radiating to his left testicle. At times, the pain goes as high as 7-9 on a scale of 10. He can walk and climb stairs, but the pain is exacerbated by certain activities such as running or certain movements, such as sitting or elevation of his left leg. He has also missed several meals and work, and has difficulty sleeping due to the pain.

57.     Mr. Martin has reported his severe pain to DOC staff on multiple occasions and has reported his frustration with DOC's failure to address his pain. He was told by his doctor that he would have to "live with the pain" and that the focus was on the level of function rather than pain control and that he was able to perform his activities of daily living and get along quite well on the tier.

58.     DOC has provided Mr. Martin with conservative treatment for his condition, including various prescription and over-the-counter medications. This treatment has not improved his condition.

59.     On July 16, 2014, the Care Review Committee denied Mr. Martin's provider's request for an abdominal/pelvic CT scan and use of intermittent opioids for his pain. It did not suggest alternative treatment. DOC referred Mr. Martin to the doctor who performed the original surgery on his left inguinal hernia. On August 12, 2014, the surgeon opined that the pain could be a possible postoperative recurrence of the hernia; neurogenic pain from the illoguinal nerve; or be due to pressure by mesh or suture. He performed an illoinguinal nerve injection with ultrasound guidance. He also recommended a CT of Mr. Martin's pelvis and a repeat illoguinal nerve injection with ultrasound guidance. He asked Mr. Martin to return after the CT was obtained. On August 20, 2014, the CRC again denied Mr. Martin's provider's request for a pelvic CT scan.

COMPLAINT– Page 11

COLUMBIA LEGAL SERVICES
Institutions Project
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-0838

1     60.     The illoinguinal nerve injection provided some mild relief for Mr. Martin. On

2 November 5, 2014, the Care Review Committee denied Mr. Martin's provider's request for a

3 repeat ultrasound-guided inguinal nerve injection.

4     61.     Mr. Martin filed a grievance about the CRC's refusal to treat his medical

5 condition, which was denied. He appealed the decision to the highest level possible, but these

6 appeals were also denied.

7     62.     As a result of Defendants' denial of the treatment necessary to properly treat his

8 condition, Mr. Martin is likely to continue suffering severe pain and limitations on basic daily

9 activities.

10 ***The CRC is withholding needed medical care from LeeShawn Redic.***

11     63.     In 2009, DOC medical staff diagnosed LeeShawn Redic with an umbilical hernia.

12 An umbilical hernia occurs when part of the intestine protrudes through the umbilical opening in

13 the abdominal muscles. An umbilical hernia can be painful.

14     64.     Mr. Redic's hernia causes him chronic and substantial pain, sometimes as high as

15 6 or 7 on a scale of 10.

16     65.     At times, Mr. Redic experiences so much pain and discomfort that he is unable to

17 work or eat. Due to the pain from the hernia, he was incapacitated for two entire days during

18 Thanksgiving time 2014 and was unable to attend DOC's holiday dinner.

19     66.     The only way Mr. Redic can reduce the hernia and its accompanying pain is by

20 lying down. Some days he must lie in bed all day to relieve the pain. Though lying down

21 provides some relief to Mr. Redic, it is temporary and the pain returns when he stands.

22     67.     Mr. Redic has notified DOC medical staff about his pain on several occasions and

23 has requested that DOC repair his hernia. However, the only treatment DOC has offered him is

COMPLAINT– Page 12

COLUMBIA LEGAL SERVICES
Institutions Project
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-0838

1    pain medication and directions to remain recumbent so that the hernia will reduce. DOC also

2    issued a Health Status Report, allowing Mr. Redic to remain on a lower bunk.

3        68.    In 2009 and again in 2014, Mr. Redic's DOC medical provider requested

4    permission to refer him to a surgeon for hernia repair. In both instances the CRC voted to deny

5    the treating provider's request.

6        69.    Mr. Redic filed a grievance about the CRC's refusal of treatment to repair his

7    hernia, which was denied. He appealed the decision to the highest level possible, but these

8    appeals were also denied.

9        70.    Mr. Redic's hernia continues to cause him chronic and substantial pain and

10   interferes with activities such as eating, working, and the ability to leave his cell.

11       71.    As a result of Defendants' refusal to properly treat his condition, Mr. Redic is

12   likely to continue suffering severe pain and limitations on basic daily activities.

13

14   **Impact of Inadequate CRC System on Plaintiff Class**

15       72.    Each of the above-named Plaintiffs has been, and continues to be, significantly

16   harmed by DOC's policies and practices that have resulted in the denial of treatment or testing

17   for their serious medical conditions. Their cases are not isolated or uncommon. Rather, they

18   reflect a system-wide problem that results in a substantial and ongoing risk of serious harm for

19   all DOC prisoners with serious medical needs.

20                    **V.    CLASS ACTION ALLEGATIONS**

21       73.    The named Plaintiffs bring this action on their own behalf and on behalf of the

22   following proposed class:

23           All current and future prisoners, incarcerated under the jurisdiction of the
24           Washington Department of Corrections, whose access to necessary medical care
             has been denied, or will be subject to denial, under the Department's policies and
25           practices governing access to health care requiring prior approval.

COMPLAINT– Page 13

### Numerosity: Fed. R. Civ. P. 23(a)(1)

74.     The class is so numerous that joinder of all members is impracticable. As of June 30, 2015, there were approximately 16,700 prisoners confined in DOC prisons, all of whom rely on Defendants for their medical care. Due to Defendants' policies and practices, thousands of prisoners are denied or at risk of denial of adequate treatment for serious medical needs while confined in DOC prisons.

75.     The proposed class includes future prisoners, which makes joinder not just impracticable, but impossible.

76.     The Plaintiff class members are identifiable using records maintained in the ordinary course of business by DOC.

### Commonality: Fed. R. Civ. P. 23(a)(2)

77.     There are questions of law and fact common to the members of the class, including:

    (a) Whether Defendants' policies and practices governing the approval of proposed medical care expose the class to a substantial risk of serious harm and lead to arbitrary, unsound, and counter-therapeutic clinical decisions;

    (b) Whether CRC members exercise appropriate medical judgment when they vote to approve or deny proposed care without examining the patient and without reviewing his or her medical records;

    (c) Whether Defendants regularly disregard patients' reports of chronic and substantial pain when considering whether or not to approve medical care; and

    (d) Whether prison officials violate the Eighth Amendment when they limit a patient's medical care to conservative, relatively-low-cost treatment options,

COMPLAINT– Page 14

COLUMBIA LEGAL SERVICES
Institutions Project
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-0838

1   denying access to more costly treatment when the conservative measures fail

2   and the patient remains in chronic or substantial pain.

### Typicality: Fed. R. Civ. P. 23(a)(3)

3

4   78.     The claims of the Plaintiffs are typical of those of the Plaintiff class. They arise

5   from Defendants' application of the same policies and practices, and are based on the same legal

6   theories as the claims of the class.

### Adequacy of Representation: Fed. R. Civ. P. 23(a)(4)

7

8   79.     Plaintiffs are capable of fairly and adequately protecting the interests of the class

9   because Plaintiffs do not have any interests antagonistic to the class. Plaintiffs seek to enjoin the

10  unlawful acts and omissions of the Defendants, which harm the class as well as themselves.

11  Finally, Plaintiffs are represented by a team of counsel experienced in civil rights litigation,

12  prisoners' rights litigation, and complex class action litigation.

13

### Fed. R. Civ. P. 23(b)(2)

14

15  80.     This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(2)

16  because Defendants' policies and practices that form the basis of the Complaint are common to,

17  and apply generally to, all members of the class. Furthermore, Defendants have acted or refuse to

18  act on grounds generally applicable to the class, thereby making class-wide injunctive and

19  declaratory relief appropriate.

## VI. CLAIM FOR RELIEF
## VIOLATION OF EIGHTH AMENDMENT

20

21

22  81.     The Defendants have acted, and continue to act, with deliberate indifference to the

23  serious medical needs of the Plaintiffs and the proposed class.

24  82.     By their actions and omissions, taken under color of state law, Defendants have

25  violated, and continue to violate, the rights of the Plaintiffs and members of the Plaintiff class

COMPLAINT– Page 15

COLUMBIA LEGAL SERVICES
Institutions Project
101 Yesler Way, Suite 300
Seattle, WA  98104
(206) 464-0838

1  to be free from cruel and unusual punishment, guaranteed to them by the Eighth Amendment to

2  the United States Constitution. Defendants' constitutional violations are actionable under 42

3  U.S.C. § 1983.

4  **VII. REQUEST FOR RELIEF**

5  Plaintiffs ask the Court to order the following relief:

6  83.    Certification of the class defined above;

7  84.    A declaration that Defendants' policies and practices governing the prior approval

8  of medical care requested by DOC medical providers and care by specialists not employed by

9  DOC violate the Eighth Amendment;

10  85.    Preliminary and permanent injunctions restraining Defendants from denying,

11  without reasonable medical justification, necessary care for the Plaintiffs' and class members'

12  serious medical needs;

13

14  86.    An award of Plaintiffs' reasonable attorney fees and litigation costs under 42

15  U.S.C. § 1988 and any other applicable statute or court rule;

16  87.    Leave to conform the pleadings to the evidence presented at trial; and

17  88.    Such other and further relief as justice may require.

18  DATED this 17th day of November, 2015.

19                          COLUMBIA LEGAL SERVICES

20                          /s/ MERF E. EHMAN
21                          MERF E. EHMAN, WSBA #29231
                            Attorney for Plaintiffs
22                          Merf.Ehman@Columbialegal.org

23                          /s/ NICHOLAS B. ALLEN
                            NICHOLAS B. ALLEN, WSBA #42990
24                          Attorney for Plaintiffs
                            Nick.Allen@Columbialegal.org
25

COMPLAINT– Page 16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

/s/ MELISSA R. LEE
MELISSA R. LEE, WSBA #38808
Attorney for Plaintiffs
Melissa.Lee@Columbialegal.org

Columbia Legal Services
Institutions Project
101 Yesler Way, Suite 300
Seattle, WA 98104
(206) 464-5933 – phone
(206) 382-3386 – fax


PUBLIC INTEREST LAW GROUP, PLLC

/s/ HANK L. BALSON
HANK L. BALSON, WSBA #29250
hbalson@pilg.org
Attorney for Plaintiffs

Public Interest Law Group, PLLC
705 2nd Avenue, Suite 1000
Seattle, WA  98104
(206) 838-1800


MacDONALD HOAGUE & BAYLESS

/s/ DAVID J. WHEDBEE
DAVID J. WHEDBEE, WSBA #35977
davidw@mhb.com
Attorney for Plaintiffs

/s/ JESSE A. WING
JESSE A. WING, WSBA #27751
jessew@mhb.com
Attorney for Plaintiffs

MacDonald Hoague & Bayless
705 2nd Avenue, Suite 1500
Seattle, WA  98104-1745
(206) 622-1604

COMPLAINT– Page 17