DISTRICT JUDGE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DANIEL HALDANE, WENDEL JOHNSON, TIMOTHY MARTIN, and LEESHAWN REDIC,<br><br>Plaintiffs,<br>vs.<br><br>G. STEVEN HAMMOND, M.D., Chief Medical Officer of the Washington State Department of Corrections, and DAN PACHOLKE, Secretary of the Washington State Department of Corrections, in their official capacities,<br><br>Defendants. | No. 15-CV-1810<br><br><br><br>ORDER |

**I.      INTRODUCTION**

This matter comes before the Court on Plaintiffs' Motion for Class Certification and Appointment of Class Counsel. Dkt. ## 47, 81. Defendants oppose the Motion. Dkt. # 90. Having considered the parties' briefs and balance of the record, the Court

finds oral argument unnecessary. For the reasons stated below, the Court **DENIES** Plaintiffs' Motion.

## II. BACKGROUND

Plaintiffs are prisoners in the custody of the Washington Department of Corrections (DOC). Dkt. # 1 (Complaint). DOC's healthcare services are subject to the Offender Health Plan (OHP). *Id.* at ¶ 9. The OHP defines what types of medical care are "medically necessary." *Id.* at ¶ 10; *see also* Dkt. # 47-1 at 11-12 (defining "medical necessity"). The OHP segregates care into three Levels: Level 1 care is considered medically necessary such that a practitioner may authorize treatment; Level 2 care constitutes care that may be medically necessary but requires authorization by the Care Review Committee (CRC); Level 3 care is not medically necessary and therefore a practitioner may not authorize treatment. Dkt. ## 47-1 at 13, 47-2 at 1.

The CRC is composed of physicians, physician assistants, and nurse practitioners. Dkt. ## 1 (Complaint) at ¶ 13, 47-2 at 2-5 (describing the CRC Review Procedure). The committee meets every week for a teleconference that lasts up to two hours. Dkt. # 1 (Complaint) at ¶ 15. The committee decides whether Level 2 care should be authorized—thereby raising it to Level 1 status—or denied—demoting it to Level 3.

Plaintiffs each have ailments for which their providers submitted requests to the CRC for specific treatment. *See generally* Dkt. # 1 (Complaint) at ¶¶ 26-71. The CRC denied treatment, and Plaintiffs claim that the refusals lead to their continued suffering from severe pain and limitations on daily living. *Id.* at ¶¶ 41, 54, 62, 71. Plaintiffs argue that the CRC is unreasonably denying care not just to the named plaintiffs but to an entire class of inmates. Accordingly, Plaintiffs filed a class action lawsuit against DOC and its Chief Medical Officer and Secretary.

## III. LEGAL STANDARD

The Court's decision to certify a class is discretionary. *Vinole v. Countrywide*

*Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009). Federal Rule of Civil Procedure 23 ("Rule 23") guides the Court's exercise of discretion. A plaintiff "bears the burden of demonstrating that he has met each of the four requirements of Rule 23(a) and at least one of the [three alternative] requirements of Rule 23(b)." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 724 (9th Cir. 2007). Rule 23(a) requires a plaintiff to demonstrate that the proposed class is sufficiently numerous, that it presents common issues of fact or law, that it will be led by one or more class representatives with claims typical of the class, and that the class representative will adequately represent the class. *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161 (1982); Fed. R. Civ. P. 23(a).

If a plaintiff satisfies the Rule 23(a) requirements, he must also show that the proposed class action meets one of the three requirements of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Here, Plaintiffs move for class certification under Rule 23(b)(2). Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) is met where "a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011).

In considering Rule 23's requirements, the Court must engage in a "rigorous analysis," but a "rigorous analysis does not always result in a lengthy explanation or in depth review of the record." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 (9th Cir. 2005) (citing *Falcon*, 457 U.S. at 161). The Court is neither permitted nor required to conduct a "preliminary inquiry into the merits" of the plaintiff's claims. *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974)); *see also* Fed. R. Civ. P. 23 advisory committee's note (2003) ("[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision."); *but see Dukes*, 564 U.S. at 351 (suggesting that Rule 23 analysis

may be inextricable from some judgments on the merits in a particular case). The Court may assume the truth of a plaintiff's substantive allegations, but may require more than bare allegations to determine whether a plaintiff has satisfied the requirements of Rule 23. *See*, *e.g.*, *Blackie*, 524 F.2d at 901, n.17; *Clark v. Watchie*, 513 F.2d 994, 1000 (9th Cir. 1975) ("If the trial judge has made findings as to the provisions of the Rule and their application to the case, his determination of class status should be considered within his discretion.").

## IV. DISCUSSION

Plaintiffs propose that the Court certify the following class:

> All current and future prisoners, incarcerated under the jurisdiction of the Washington Department of Corrections, whose access to necessary medical care has been denied, or will be subject to denial, under the Department's policies and practices governing access to health care requiring prior approval.

Dkt. # 1 (Complaint) at ¶ 73. The Court takes issue with Plaintiffs' ability to satisfy Rule 23(a)'s commonality requirement and will therefore limit its analysis to this core requirement of Rule 23(a).

### A. Commonality

Plaintiffs fail to satisfy the commonality requirement of Rule 23(a). Plaintiffs rely on *Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014), to show that their allegations satisfy Rule 23 and to urge this Court to grant class certification. Though the Court agrees that *Parsons* is on point in this matter, the Court disagrees that *Parsons* aids the Plaintiffs in their arguments.

In *Parsons*, the Ninth Circuit upheld the district court's order granting class certification. There, the plaintiffs' 74-page complaint detailed the Arizona Department of Correction's (ADC) mass deficiencies, going so far as to outline fifteen specific, uniform,

statewide policies and practices that exposed all ADC's inmates to a substantial risk of harm. *Id.* at 664. The complaint included graphic examples in which medical staff gave prisoners expired medication, caused prisoners to reuse catheters, and delayed care when outside contracts were cancelled. *Id.* at 664-666 n.5-7. Additional examples included correctional officers standing by while a prisoner bled to death after a suicide attempt and failing to perform CPR on a patient who collapsed from a heart attack. *Id.* The plaintiffs argued that the defendants' policies and practices violated the Eighth Amendment because they were deliberately indifferent to inmates' health and safety and exposed inmates to a substantial risk of serious harm.

The plaintiffs supported their motion for class certification in *Parsons* with ample evidence collected through the discovery process. Some of the more pertinent documents included communications between the ADC and its health services provider in which ADC "identified serious and systemic deficiencies in [the health services provider's] provision of health care to ADC inmates." *Id.* at 668. The health services provider responded by "condemn[ing] the low quality of ADC's preexisting programs." *Id.* Other documents obtained through discovery uncovered practitioners' warnings of "abysmal staffing" that was "'grossly insufficient' and 'so limited that patient safety and orderly operation of ADC facilities may be significantly compromised.'" *Id.* (docket citations omitted).

The plaintiffs further supported their motion in *Parsons* with unrebutted expert reports that validated the practitioners' criticisms. *Id.* at 669-671. The reports were detailed and included observations that there were system-wide defects and deficiencies that "placed prisoners at serious risk of harm, and in some cases, death." *Id.* at 669. The plaintiffs also included declarations by the named plaintiffs describing their experiences with ADC policies. *Id.* at 672.

Having reviewed the evidence and the lower court's conclusions, the Ninth Circuit agreed that the plaintiffs had satisfied the elements of Rule 23(a). [1] As to the commonality requirement, the court found that all ADC inmates were exposed to "specified statewide ADC policies and practices that govern the overall conditions of health care services and confinement," and this exposure resulted in "a substantial risk of serious future harm to which the defendants are deliberately indifferent." *Id.* at 678. The court found that the identified policies and practices were "the 'glue' that holds together the putative class . . . either each of the policies and practices is unlawful as to every inmate or it is not." *Id.*

Plaintiffs in this case attempt to bring what they believe are similar claims against DOC. Like in *Parsons*, Plaintiffs' claims are grounded in the Eighth Amendment. Though the Court does not expressly analyze the merits of the claims at this stage in litigation, it must briefly consider the nature of the underlying claims to properly analyze whether the claims meet Rule 23(a)'s commonality requirement. Accordingly, the Court reiterates that Plaintiffs' carry the burden to prove that Defendants were "deliberately indifferent to policies and practices that expose inmates to a substantial risk of serious harm." *Id.* at 677.

In contrast to the plaintiffs in *Parsons*, Plaintiffs in this case have not adequately identified common policies and practices to show that Defendants were deliberately indifferent to inmates' needs. Without proving a common set of policies and practices exist, Plaintiffs have failed to meet their burden under Rule 23(a)(2). Plaintiffs specifically identify four questions of law and fact that they claim are common to the class. Dkt. # 1 (Complaint) at ¶ 77. These questions have their own common theme: whether the CRC systematically and unreasonably denies Level 2 claims. In their Complaint, Plaintiffs outline the CRC meetings in which members spend one to two

---

[1] *Parsons* is an extreme case. *Parsons*, 754 F.3d at 683 ("Here, however, the plaintiffs have met, and indeed far exceeded, that requirement."). By no means is *Parsons* the floor Plaintiffs must surpass to succeed on their Motion.

hours reviewing dozens of cases. *Id*. at ¶ 15. Plaintiffs explain that many CRC members are not as familiar with the areas of medicine as the patients' treating physicians and on many occasions have not had the opportunity to physically examine the patient. *Id.* at ¶¶ 14, 18. Plaintiffs claim that these faults are evidence of deliberate indifference.

To support their motion, Plaintiffs include various declarations, deposition excerpts, and an expert report[2] attempting to illustrate that the care afforded to DOC prisoners is subpar. By way of example, Plaintiffs include an exchange between DOC physicians in which one physician remarks that DOC physicians "walk a fine line between medical necessity in the OHP and what would be a charge of medical malpractice on the outside." Dkt. # 47-11 at 18. Plaintiffs' expert, Todd Wilcox, opined on the inadequacy of the CRC to make educated judgments as to medical necessity for many of the treatment regimens proposed by prisoners' treating physicians. Dkt. # 47-11 at 3-7. Dr. Wilcox targeted the CRC's lack of specialized care and failure to defer to treating physicians as a deviation from the standard of care in healthcare. *Id.* at 4.

CRC members explained in depositions that meetings often turned on how the committee could "justify a no" when considering treatment. Dkt. # 47-5 at 36. Some members strategized ways to obtain necessary care for their patients, sometimes by asking for more care than necessary so that a concession would result in the correct amount of care. Dkt. # 72 at 8. But none of these members admitted that a perceived culture of "no" affected their own behavior or caused them to vote against their judgment. CRC members opined on whether some mid-level medical staff were less "independent," but no CRC members affirmatively answered that another member had been swayed by non-medical reasons.

Though Plaintiffs' evidence is certainly concerning and could evidence poor performance—or even malpractice—on the part of DOC practitioners, it does not

---

[2] Unlike the expert reports described in *Parsons*, Dr. Wilcox's report is full of generalities. Dkt. # 47-11 at 1-14. The Court would not expect Defendants to expend resources submitting a rebuttal to this particular report.

ORDER-7

evidence a common policy or practice by the CRC to systematically and unreasonably deny care. In opposition to Plaintiffs' motion, Defendants provided declarations from treating doctors explaining why they proposed certain treatment regimens and the reasons the CRC may have denied those suggestions. *See, e.g.*, Dkt. # 93 at 1-14. Plaintiffs submitted medical records that corroborated the doctors' declarations, oftentimes evidencing a concerted and prolonged effort to treat and care for the inmates. For example, an inmate, L.G., submitted a declaration alleging that the CRC's initial denials of a colonoscopy led to a late finding of colon cancer. Dkt. # 58 at 1-7. But L.G.'s medical records show that a single request for a colonoscopy was made to the CRC, which the CRC granted. Dkt. # 58-2 at 3. L.G's treating physician, Dr. Mary Colter, stated that the clinic began treating L.G. in December 2010 with a computed tomography scan, followed by more than sixteen follow-up visits in 2011, twenty visits in 2012, and eight visits in 2013. Dkt. # 93 at 4. In September 2014, L.G. reported that she had had rectal bleeding at some point prior but failed to report to the clinic. *Id.* L.G.'s case was presented only once to the CRC—in December 2014—at which point the CRC approved the requested colonoscopy. *Id.* at 5. Said differently, the CRC was not involved in L.G.'s case prior to December 2014 and therefore could not have acted indifferently toward her until it was presented with her file. And, when presented with L.G.'s case, the CRC approved the recommended course of treatment.

Plaintiffs target the CRC in their lawsuit, but the evidence they present to the Court does not validate their claims. Rather, the parties' evidence shows disagreements about which treatment options are more appropriate for each patient. *See, e.g.*, Dkt. ## 47-5 at 25 (a physician's assistant (PA) explains that it is "not uncommon for [inmates] to be tapered off of gabapentin to try other modalities" even though the PA, herself, may disagree with this treatment decision), 94-1 at 7-8 (explaining different ways a surgeon could approach a hernia repair that would be within the definition of "medical necessity"). But disagreements between physicians do not amount to Eighth Amendment

violations. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976) ("But the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court . . . ."); *see also Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) ("To prevail under these principles, [the plaintiff] must show that the course of treatment the doctors chose was medically unacceptable under the circumstances, and the plaintiff must show that they chose this course in conscious disregard of an excessive risk to plaintiff's health.") (internal citations omitted). Neither does "every claim by a prisoner that he has not received adequate medical treatment state[] a violation of the Eighth Amendment." *Estelle*, 429 U.S. at 291. To be clear, the common question presented for class certification is whether the CRC's policies and practices have resulted in Defendants' deliberate indifference to the proposed class such that the class is exposed to a substantial risk of serious harm. But, as pled and argued, the Court does not find common policies and practices that amount to deliberate indifference.

Plaintiffs' Reply includes a declaration from a new expert, Dr. Straley. Dkt. ## 105, 108. Dr. Straley appears to address the deficiencies in the OHP. The OHP, generally, is not before the Court for consideration. Much of Plaintiffs' Reply improperly includes arguments and evidence that were absent from both Plaintiffs' Complaint and their motion for class certification, both of which focus solely on the CRC and are supported primarily by Dr. Wilcox's report. By raising new arguments on Reply that are not present in their Complaint, Plaintiffs have failed to put Defendants on notice to the claims against which they must defend and denied them the opportunity to respond to the arguments in responsive briefs. The Court will not consider the new arguments and evidence raised for the first time in Plaintiffs' Reply. *See Bridgham-Morrison v.*

ORDER-9

*Nat'l Gen. Assurance Co.*, No. C15-927RAJ, 2015 WL 12712762, at *2 (W.D. Wash. Nov. 16, 2015); *see also U.S. v. Patterson*, 230 F.3d 1168, 1172 n.3 (9th Cir. 2000).

The Plaintiffs specifically request that the Court certify a class action based upon the policies and procedures of the CRC, but they have failed to meet their burden under Rule 23(a)'s commonality requirement. Accordingly, the Court need not analyze Rule 23(a)'s other requirements.

## V. CONCLUSION

Based on the foregoing, the Court **DENIES** Plaintiffs' motion for class certification. Dkt. ## 47, 81. This Order renders Mr. Wilton's motion to intervene **MOOT**. Dkt. # 114. The Court further **DENIES** Defendants' motion to strike portions of Plaintiffs' reply. Dkt. # 112.

Dated this 18th day of September, 2017.

*[signature: Richard A. Jones]*

The Honorable Richard A. Jones
United States District Judge